**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TYRONE SMITH,

        Defendant-Appellant,

v.

DONALD DORSEY, Warden,

        Plaintiff-Appellee.

No. 05-2027

(D. New Mexico)

(D.C. No. CIV-04-261-MCA/LFG)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **SEYMOUR,** and **TYMKOVICH**, Circuit Judges.

Tyrone Smith, a New Mexico state prisoner serving a life sentence

appeals the district court's dismissal of his petition filed pursuant to 28

U.S.C. § 2254. Mr. Smith was convicted of first-degree murder, conspiracy,

and two counts of tampering with evidence. The district court adopted the

findings and recommendations of the magistrate judge and denied Mr.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Smith's habeas petition and also denied Mr. Smith's request for a Certificate of Appealability ("COA"). A panel of this court granted Mr. Smith request for a COA pursuant to 28 U.S.C. § 2253 on several contentions, including four ineffective assistance claims, two due process claims, a Confrontation Clause violation, and cumulative error.[1] For substantially the same reasons set forth by the magistrate judge, we deny Mr. Smith's habeas petition.

## I. BACKGROUND

### A. Procedural posture

After a nine-day jury trial held in New Mexico state court in September 1995, the jury convicted Mr. Smith of first-degree murder of Jerol Younger, conspiracy, and two counts of tampering with evidence, in violation of N.M. Stat. Ann. § 30-2-1(A)(1) (1994), *id.* § 30-28-2(B)(1) (1979), *id.* § 30-22-5 (1963). The state trial court sentenced Mr. Smith to life plus twelve years. The New Mexico Supreme Court rejected his direct appeal; the state district court denied Mr. Smith's postconviction petition for habeas corpus, and the New Mexico Supreme Court and the United States Supreme Court denied his petition for a writ of certiorari. Mr. Smith has

---

[1] We note that Mr. Smith sought, and was granted, a COA on a *Brady* claim and several Confrontation Clause claims that he has chosen not to raise before us.

exhausted each of his claims before the state courts.

**B. Statement of Facts**

The New Mexico Supreme Court provided the following factual background when it rejected the direct appeals of Mr. Smith and his co-defendant Mr. Brown:

> On September 14, 1992, the body of Jerol Younger, an Air Force sergeant stationed at Kirtland Air Force base, was found in an irrigation ditch in south Albuquerque. He had been strangled and beaten to death. Younger allegedly was a drug dealer in Albuquerque up until the time of his death.
>
> Denise Spikes and Frank Lucero were the two main prosecution witnesses. The stories they told provided the theory of the State's case. Spikes testified as follows. She and Younger had been married at one time and had a son together. Spikes testified that Younger disliked the intimate relationship that had developed between Spikes and Defendant Smith. According to Spikes, Defendant Smith and Spikes decided to resolve the relationship with Younger by going to talk to him. Spikes called Younger from a pay phone in Albuquerque and asked him to come and get her. The two drove to Lucero's house, a small, free-standing room in Albuquerque's South Valley, where Defendants and Lucero were waiting. When Spikes knocked on the door, Younger was grabbed and taken into the house, and Spikes remained outside. She testified she heard Younger scream and she ran to a nearby pay phone. Defendant Smith, however, came to get her, apparently before she was able to phone for help. When she arrived back at Lucero's house, Younger was gone, as was his car. Defendant Smith went into the house for a few minutes, came out, and he and Spikes went to his mother's home. Several weeks later, Spikes asked Defendant Smith if he had killed Younger and he denied it.
>
> Lucero, who was in the room at the time of the killing, testified as follows. He said that he was at his girlfriend's house when Defendant Smith came to the door and said that he needed to go to Lucero's house because someone was going to pick up a television. Lucero testified that he got into a Blazer belonging to Defendant Smith's mother, in which Spikes and Defendants were

seated. They drove to Lucero's house and entered. Lucero testified that Defendant Smith and Spikes left, and Defendant Smith returned alone with a television, which he placed in the closet. Lucero stated that he heard a car drive up, and heard two voices; he recognized one as the voice of Spikes, and the other as male. The man entered, and Defendant Smith told the man that the television was in the closet. When he went to the closet, Defendants attacked the man with hammers. Lucero testified that Spikes was walking in at the time, but that the door must have closed on her. Lucero testified that Defendant Brown retrieved a gun from a bag and held it on the man while Defendant Smith tied him. Defendant Smith then told Lucero to put on gloves, take the man's car keys, and get rid of the car. Lucero did so. Afterwards, Defendant Smith found Lucero and brought him back to his house. The man was still on the floor at Lucero's home. The three men loaded the body into a truck and dumped his body in a ditch.

Following the murder, Lucero became very anxious around police officers. According to Lucero's cousin, Denise Purcell-Abeyta, and her roommate, Matilda Gonzales, Lucero admitted to killing Younger because he owed Younger money for drugs. Shortly after this, police attempted to search Lucero's home, but it had been burned down. In the remains of the house, however, the police found a hammer head and handle, plastic bags, duct tape, and cords similar to those used to tie up Younger. Around the time of the search, both Lucero and Defendant Smith left the state and traveled to San Diego to visit Spikes.

In San Diego, Lucero stayed with his aunt, Linda Satomba. When police located Satomba, she initially denied knowing his whereabouts. Later, though, she told police Lucero had related to her a story similar to his trial testimony. According to Satomba, Lucero never admitted to killing Younger. Satomba testified at trial regarding Lucero's statements. Her testimony was admitted under the prior consistent statement rule.

Lucero was given transactional immunity and Spikes was given use immunity to testify at trial. Defendants were convicted of first degree deliberate intent murder, conspiracy to commit first degree murder, and two counts of evidence tampering. They were sentenced to life imprisonment plus twelve years.

*New Mexico v. Brown,* 969 P.2d 313, 317-18 (1998).

## II. DISCUSSION

This court granted Mr. Smith a COA on eight issues: Issues (1) through (4) involve ineffective assistance of counsel for counsel's failure (1) to move to exclude Mr. Lucero's testimony because his immunity agreement was impermissibly coercive; (2) to request a limiting instruction regarding Mr. Lucero's prior consistent statements to Ms. Satomba; (3) to present evidence that would have shown that Ms. Spikes' motive to lie arose before she made certain prior consistent statements to Ms. Jimenes and Ms. O'Grady; and (4) to object under NMRA 11-403 to testimony concerning Ms. Spikes' prior inconsistent statements. The remaining contentions are (5) Mr. Lucero's immunity agreement violated Mr. Smith's due process rights because it was impermissibly coercive; (6) New Mexico's theory of admissibility regarding Ms. Satomba's out of court statements violated Mr. Smith's due process rights; (7) Mr. Smith's Confrontation Clause rights were violated via stipulation regarding the testimony of Karen Thomas; and (8) cumulative error violated Mr. Smith's right to due process.

To succeed on his § 2254 petition, Mr. Smith must establish that the New Mexico Supreme Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct." *Id.* § 2254(e)(1); *Smith v. Mullin,* 379 F.3d 919, 924-25 (10th Cir. 2004). We review the district court's legal analysis of the state court decision de novo.

The magistrate judge considered and rejected each of these claims on the merits. We have considered the magistrate judge's thorough and lengthy findings, the district court's order, the briefs, and the entire record on appeal. For substantially the same reasons articulated by the magistrate judge in its well-reasoned findings and recommended disposition, we deny Mr. Smith's petition for habeas corpus.

First, the magistrate judge correctly determined that none of issues (1) through (4) met *Strickland v. Washington*'s deficient performance or prejudice prongs. 466 U.S. 668, 688 (1984). The New Mexico district court determined that Mr. Lucero's testimony was not inherently unreliable and that his credibility was properly left to the jury. It found there was no reasonable probability that a motion to exclude the testimony would have been successful. We agree with the magistrate judge that this was not an unreasonable application of federal law.

Second, as to the limiting instruction, the New Mexico district court determined such an instruction "would have had little value and would not

have changed the outcome of the case." Aplt's App. vol. V, at 1192. We agree that neither prong of *Strickland* has been met and this was not an unreasonable application of clearly established federal law.

Third, as to Ms. Spikes' motive to lie, the state court determined that "[r]easonably competent attorneys would have concluded that there was greater potential for damage in presenting this evidence than in using existing evidence to establish when Ms. Spikes' motive to lie arose." *Id.* at 1196-97. The magistrate judge determined that the decision to call a witness is a trial tactic, and agreed that Ms. Jimenes and Mr. Tolbert would have made statements that were prejudicial to the defense. We agree with the magistrate judge's conclusions.

Fourth, as to failure to object under NMRA 11-403,the New Mexico state court found this decision to be a tactical one, and concluded that "a reasonably competent attorney would have decided not to object under Rule 403 to testimony of Spikes' prior inconsistent statements since such objections would have been overruled" and there is no evidence "that such an objection would have affected the outcome of the trial." Aplt's App. vol. V, at 1198. The magistrate judge stated there was "nothing unreasonable" about the state habeas proceeding's outcome and that "[t]he testimony was of more than marginal relevance." *Id.* vol. III, at 805 (Magistrate Judge's Findings and Recommended Disposition). "[This] court cannot say that

exclusion of this testimony would have made a difference in the outcome of the trial. . . ." *Id.* at 806. We agree that the New Mexico court's ruling was not an unreasonable application of federal law.

Fifth, as to the coercive nature of Mr. Lucero's immunity agreement, which included several paragraphs prepared by the government as to what his testimony would be, all parties agree that this particular agreement is quite unusual. Mr. Lucero promised to testify truthfully, and the New Mexico Supreme Court determined that the agreement did not coerce Mr. Lucero into doing otherwise.

The magistrate judge found that there was "nothing on the record that would tend to show Lucero was coerced into testifying as he did." *Id.* at 799. Although both Mr. Smith's counsel and the attorney for the State found the agreement to be "unusual," this acknowledgment "does not establish that the agreement was coercive." *Id.* We agree with the magistrate judge that the New Mexico Supreme Court's decision was not an unreasonable application of federal law nor was it based on an unreasonable determination of the facts in light of the evidence presented.

Sixth, as to whether the admission of the prior consistent statements from Ms. Satomba supporting Mr. Lucero's version of events violated Mr. Smith's due process rights, the New Mexico Supreme Court held the evidence was improperly admitted as substantive evidence, but any error

-8-

was harmless because the statements could come in as rehabilitative evidence. The magistrate judge determined that "[t]here was sufficient legal basis for the [state] supreme court to rule that the testimony was proper as rehabilitation evidence, after Lucero's credibility was attacked on cross-examination." *Id.* at 827. Moreover, "[a]lthough the evidence was admitted at trial as non-hearsay under Rule 801, the prosecution did not unduly emphasize Satomba's testimony in closing argument. . . . The Court cannot say that the State argued to the jury that Satomba's testimony constituted substantive evidence of Smith's guilt." *Id.* We agree with the magistrate judge's conclusion that the state supreme court's reasoning was not an unreasonable application of federal law, nor did it render the trial fundamentally unfair.

Seventh, Mr. Smith's Confrontation Clause argument fails because Ms. Thomas was a defense witness, who would not be subject to cross-examination by Mr. Smith. We agree with the New Mexico Supreme Court's conclusion that Mr. Smith

> cannot expect that [he] would be able to present Thomas' testimony in the form of a stipulation without the State bringing out in the stipulation how [he] would expect Thomas to testify on cross-examination. We agree with the State's contention that Defendant[] accepted paragraphs nine and ten of the stipulation in order to gain the first eight paragraphs of the stipulation.

969 P.2d at 323.

Eighth and finally, having found no error in any of those rulings, we must conclude that there was no cumulative error.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's denial of Mr. Smith's § 2254 petition for habeas corpus.

Entered for the Court,


Robert H. Henry
Circuit Judge